**PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY,**
Plaintiff,

v.

**UNITED STATES of America,**
Defendant.

No. 1:01 CV 116.

United States District Court,
E.D. Tennessee,
at Chattanooga.

July 7, 2004.

Peter H. Winslow, Samuel A. Mitchell, Scribner, Hall & Thompson, LLP, Washington, DC, for Plaintiff.

Richard G. Jacobus, U.S. Department of Justice Tax Division, Washington, DC, for Defendant.

## MEMORANDUM

COLLIER, District Judge.

Plaintiff Provident Life and Accident Insurance Company ("Provident Life") brought this action pursuant to 26 U.S.C. § 7422(a) to recover federal income taxes and related interest collected from Provident Life for the tax year 1984 (Court File No. 1, Complaint). This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1346(a)(1), and venue is proper in this district pursuant to 28 U.S.C. § 1402(a)(2). The parties stipulate Provident Life is entitled to a reduction in taxable income in the amount of $7,385,004 for the tax year 1984 and a resulting overpayment and refund of 1984 taxes and assessed interest (Court File No. 28, Summary Judgment Stipulation ("Stip.") ¶ 12). At issue in this action, then, is the amount of refund to which Provident Life is entitled.

Defendant United States of America ("United States") filed counterclaims in this action to recoup unassessed income tax liabilities for the tax years 1985 and

1986, and to thereby reduce Provident Life's refund, under the doctrine of equitable recoupment and alternatively under the mitigation provisions of 26 U.S.C. §§ 1311–1314 (Court File No. 24, Amended Answer and Counterclaims). The parties subsequently stipulated to the dismissal without prejudice of the United States' mitigation-based counterclaims because mitigation under those provisions is not ripe (Court File No. 26). Accordingly, the Court will **DISMISS WITHOUT PREJU-DICE** Defendant's counterclaims based on mitigation under 26 U.S.C. §§ 1311–1314, pursuant to Fed.R.Civ.P. 41(a), (c).

Before the Court are competing motions for summary judgment filed by Provident Life (Court File No. 27) and by the United States (Court File No. 30) regarding the United States' equitable recoupment counterclaims for tax years 1985 and 1986. In ruling on these motions, the Court considered the parties' jointly filed stipulation of material facts and other statements (Court File No. 28), their supporting memoranda (Court File Nos. 29, 31), and their opposing memoranda (Court File Nos. 32, 33). The Court also considered the United States' supplemental opposing brief (Court File No. 34) and Provident Life's response to that submission (Court File No. 35). For the following reasons, the Court will **GRANT** Provident Life's motion for summary judgment for a refund of 1984 income tax in the amount of $2,717,681 plus overpayment interest and statutory interest (Court File No. 27)[1] and will **DENY** the United States' motion for summary judgment on its counterclaims for equitable recoupment of unassessed income tax liabilities for 1985 and 1986 (Court File No. 30). Because no further matters will remain for adjudication, the Court will **DIRECT** the Clerk to **CLOSE** this case.

## I. *STANDARD OF REVIEW*

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). Initially, the burden is on the moving party to conclusively show no genuine issues of material fact exist, *Leary v. Daeschner,* 349 F.3d 888, 897 (6th Cir. 2003), and the Court must view the evidence and draw all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). However, the nonmoving party is not entitled to a trial merely on the basis of allegations, but must come forward with some significant probative evidence to support its claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Id.* at 323, 106 S.Ct. at 2552.

The Court determines whether sufficient evidence has been presented to make an issue of fact a proper jury question, but does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Weaver v. Shadoan,* 340 F.3d 398, 405 (6th Cir. 2003). The standard for summary judgment mirrors the standard for directed verdict. *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. The Court must decide

---

**1.** The parties agree the reduction of Provident Life's taxable income for tax year 1984 results in a $2,717,681 overpayment of income tax for that tax year (Stip.¶ 16).

"whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. at 2512. There must be some probative evidence from which the jury could reasonably find for the nonmoving party. If the Court concludes a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Id.; Lansing Dairy, Inc. v. Espy,* 39 F.3d 1339, 1347 (6th Cir.1994).

## II. *RELEVANT FACTS*

The facts of this case have been stipulated by the parties and are undisputed. Provident Life is a life insurance company subject to federal income tax under the Internal Revenue Code, specifically 26 U.S.C. §§ 801–818, as a calendar year taxpayer (Stip.¶¶ 1–2). At all times relevant to this action, Provident Life underwrote a group insurance program which provided life insurance, accidental death and dismemberment insurance, and excess major medical insurance for members of the American Medical Association ("the AMA insurance program") (Stip.¶¶ 4, 18–19). Under an agreement with the AMA and a broker ("the Tripartite Agreement"), Provident Life agreed to "experience rate" the AMA insurance program (Stip.¶¶ 20–23). According to the agreed upon experience rating plan, Provident Life applied a formula to compare premiums received under the AMA insurance program with specified charges incurred during each policy year (Stip.¶ 24). Premiums in excess of charges became "experience rating credits" subject to uses specified in the Tripartite Agreement (*Id.*). By agreement the experience rating credits constituted a "premium stabilization reserve" to ensure Provident Life was able to comply with state law and to meet its contractual obligations under

the AMA insurance program (Stip.¶¶ 26–28, 31).

Certain group insurance policies within the AMA insurance program had policy years that did not correspond to the calendar year (Stip.¶ 32). At the end of each calendar year, Provident Life established a reserve for its estimated liability for experience rating credits for those group insurance policies whose policy years had not yet expired as of December 31 (*Id.*). These amounts were called "open-year experience rating credits" and the reserves for open-year experience rating credits were called "open-year credit reserves" (Stip.¶¶ 32–33). For years in which Provident Life estimated its charges would exceed premiums as of its calendar year-end, it established on its books a negative liability for the open-year experience rating credits (Stip.¶ 32).

For calendar years 1984, 1985, and 1986, Provident Life computed the year-end balances in the AMA premium stabilization reserves that were attributable to open-year experience rating credits for the group insurance policies whose policy years did not end on December 31 (Stip.¶ 25). To determine the year-end balances for 1985 and subsequent years, Provident Life considered facts that occurred after December 31, 1984, the close of its 1984 tax year (Stip.¶ 36). For tax years 1985 and 1986, the year-end balances for the open-year experience rating credit reserves were based upon premiums received and specified charges incurred during 1985 and 1986, respectively (Stip.¶ 37–39).

Provident Life reported changes in its reserve for AMA insurance program open-year experience rating credits as part of its premium stabilization reserves under 26 U.S.C. § 810(c), which was reclassified in 1984 as 26 U.S.C. § 807(c)(6) (Stip.¶ 44). In 1984, the open-year experience rating

credit premium stabilization reserve for the AMA insurance plan decreased by $7,385,004 (Stip.¶¶ 35, 45). Provident Life reported this amount as an income item under 26 U.S.C. § 803(a)(2) on its consolidated income tax return for tax year 1984 (Stip.¶ 45). When Provident Life filed its 1984 consolidated income tax return and reported income attributable to the decrease in it open-year experience rating credit reserve, it could not have accounted for the year-end reserve balances for 1985 or 1986 (Stip.¶¶ 40, 43).

In 1985 the open-year experience rating credit premium stabilization reserve increased by $994,453, and Provident Life reported this amount as a deduction under 26 U.S.C. § 805(a)(2) for the tax year 1985 (Stip.¶¶ 35, 48). In 1986, the open-year experience rating credit premium stabilization reserve increased by $3,011,210, and Provident Life reported this amount as a deduction for the tax year 1986 (*Id.*). Similarly, for tax years 1987–1990 and 1992, Provident Life reported as deductions the year-end premium stabilization reserve balance increases attributable to AMA insurance program open-year experience rating credits (Stip.¶ 48). In 1991 the year-end premium stabilization reserve balance decreased due to AMA insurance program open-year experience rating credit reserves, and Provident Life reported the decrease as an income item for tax year 1991 (Stip.¶ 46).

The Internal Revenue Service ("IRS") examined Provident Life's tax returns for tax years 1986 through 1992, and the IRS concluded the AMA insurance program open-year experience rating credits were properly characterized as policyholder dividends that had not yet accrued as of December 31 each calendar year (Stip.¶ 6). Because life insurance companies must account for policyholder dividends on an ac-

crual basis under 26 U.S.C. § 808(c), unaccrued liability for policyholder dividends cannot be deducted for tax purposes until the dividends are either paid or accrued (*Id.*). Therefore, the IRS disallowed the deductions Provident Life reported for tax years 1986–1990 and 1992 reflecting year-end premium stabilization balance increases attributable to AMA insurance program open-year experience rating credits (Stip.¶¶ 5–6, 49). The IRS, however, did not adjust Provident Life's taxable income for 1984 or 1991, tax years for which the open-year experience rating credit premium stabilization reserve decreased and Provident Life reported those decreases as income (Stip.¶ 8). Further, the IRS did not adjust or disallow the deduction Provident Life reported in tax year 1985 or the entire deduction it reported in tax year 1986 (Stip.¶ 9). The time for the IRS to assess additional taxes against Provident Life has expired for tax years 1985 and 1986, pursuant to 26 U.S.C. § 6501(a) (Stip.¶ 10). However, the time for Provident Life to seek a refund of taxes it overpaid for tax year 1991—due to the decrease in open-year experience rating credit premium stabilization reserves it reported as income—remains open under 26 U.S.C. § 6532(a), and Provident Life has filed a refund claim seeking reversal of the income item it reported (Stip.¶¶ 46, 47).

### III. *DISCUSSION*

In this action, Provident Life seeks a refund of certain income taxes paid for tax year 1984 on the theory that AMA insurance program open-year experience rating credits should be treated as unaccrued policyholder dividends, consistent with the IRS's conclusion and adjustments for tax years 1986 through 1990 and 1992 (Stip.¶ 11).[2] Likewise, the United States'

---

**2.** Provident Life's pending refund claim for tax year 1991 also appears consistent with the

treatment of open-year experience rating ·credits as unaccrued policyholder dividends.

claim for equitable recoupment of unassessed tax liability for tax years 1985 and 1986 seeks to consistently treat the open-year experience rating credits as unaccrued policyholder dividends by effectively disallowing the deductions Provident Life reported in tax years 1985 and 1986 based on increases in the open-year credit reserves. As noted before, the primary issue presented by the parties' cross motions for summary judgment is whether the doctrine of equitable recoupment applies to allow the United States to recoup unassessed income tax liability for tax years 1985 and 1986—assessment of which is barred by the statute of limitations—from the refund due Provident Life for its overpayment of income tax for tax year 1984. First the Court will review the doctrine of equitable recoupment as applied in tax cases. Then the Court will explain why equitable recoupment does not apply in this case.

## A. Equitable Recoupment in Tax Cases

 Under the doctrine of equitable recoupment "a party litigating a tax claim in a timely proceeding may, in that proceeding, seek recoupment of a related, and inconsistent, but now time-barred tax claim *relating to the same transaction.*" *United States v. Dalm,* 494 U.S. 596, 608, 110 S.Ct. 1361, 1368, 108 L.Ed.2d 548 (1990) (emphasis added). The United States Supreme Court has emphasized "a claim of equitable recoupment will lie only where the Government has taxed *a single transaction, item, or taxable event* under two inconsistent theories." *Id.* at 605 n. 5, 110 S.Ct. at 1367 n. 5 (emphasis added). As distinguished from offset, equitable recoupment allows the IRS or a taxpayer to reduce a refund or a deficiency due for one tax year by an underpayment or overpayment from a different tax year, but only in certain circumstances. *IES Indus., Inc. v. United States,* 349 F.3d 574, 581 & n. 6 (8th Cir.2003). To preserve and effectuate

the purposes of limitations statutes in federal tax litigation, equitable recoupment is permitted only in narrowly defined cases. *Id.* at 581 (citing *Rothensies v. Elec. Storage Battery Co.,* 329 U.S. 296, 301–02, 67 S.Ct. 271, 273, 91 L.Ed. 296 (1946)).

The United States Supreme Court first approved the application of equitable recoupment in a federal tax case in *Bull v. United States,* 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421 (1935). In *Bull* an estate received money from a partnership in which its decedent was a member, and it mistakenly paid estate tax rather than income tax on that amount. *Id.* at 251, 260–61, 55 S.Ct. at 696, 700. Further, the estate did not file a timely claim for refund of the estate tax. *Id.* at 260–61, 55 S.Ct. at 700. When the United States brought a proceeding against the estate to collect the income tax due on the money it received from the partnership, the Court permitted the estate to raise its mistaken payment of estate tax on that money in defense because both the income tax deficiency claim and the time-barred estate tax overpayment claim arose out of the same transaction—the estate's receipt of money from the partnership. *Id.* at 261, 55 S.Ct. at 700. The Supreme Court explained "recoupment is in the nature of a defense arising out of some feature of the transaction upon which the plaintiff's action is grounded. Such a defense is never barred by the statute of limitations so long as the main action itself is timely." *Id.* at 262, 55 S.Ct. at 700–01.

The Supreme Court also addressed equitable recoupment in *Stone v. White,* 301 U.S. 532, 57 S.Ct. 851, 81 L.Ed. 1265 (1937). In *Stone* the tax authorities assessed and collected income tax on the income of a trust estate from the relevant trustees when collection from the trust beneficiary, who properly owed the income tax, was barred by the statute of limita-

tions. *Id.* at 533–34, 57 S.Ct. at 852. The trustees then brought a proceeding for refund of their income tax overpayment, and the United States raised the doctrine of equitable recoupment as a defense. *Id.* The Supreme Court recognized a single tax was due upon the particular income involved in the case and that the tax paid by the trustees should have been paid by the trust beneficiary. *Id.* at 535, 57 S.Ct. at 853. It further recognized the equitable principles involved in an action to recover erroneously paid tax, that the interests of the trustees and the beneficiary were aligned, and that denying the refund to the trustees would neither unjustly enrich the government nor harm the trustees or the trust beneficiary. *Id.* at 538–39, 57 S.Ct. at 854–55. The *Stone* court thus allowed the United States to use equitable recoupment, based on a time-barred income tax deficiency claim, to reduce the refund for overpayment of income tax where the proceeding in which the defense was raised was itself timely and the refund claim and recoupment involved the proper tax treatment of one particular income.

Some lower courts applying equitable recoupment in tax cases after *Bull* and *Stone* did not strictly observe the "same transaction" aspect of the doctrine. For example, in *Dixie Margarine Co. v. C.I.R.,* 115 F.2d 445 (6th Cir.1940), a manufacturer paid stamp and license taxes on its food products from 1923 through 1931 pursuant to an erroneous application of the Oleomargarine Act. *Id.* at 446. In 1932 the manufacturer received a refund for the taxes it improperly paid from late 1925 through 1931, and the government assessed an income tax deficiency based on the amount of that refund. *Id.* at 446–47.

The manufacturer's claim for refund of taxes improperly paid from 1923 through late 1925 was time-barred, but the manufacturer raised this matter under the doctrine of equitable recoupment in defense to the United States' action for tax deficiency based on the 1932 refund. *Id.* The Board of Tax Appeals concluded the manufacturer could not recoup the taxes it overpaid from 1923 through late 1925, but the Sixth Circuit reversed that decision. *Id.* at 447. The Sixth Circuit stated the deficiency claim and the recoupment claim must arise out of the same transaction or subject matter for equitable recoupment to apply, and it held the manufacturer's claim for refund and the government's deficiency assessment had a common origin in the erroneous application of the Oleomargarine Act to the manufacturer's products. *Id.* Thus, the case was remanded so the government's deficiency assessment would be reduced by the manufacturer's refund of taxes erroneously paid in 1923 through late 1925, pursuant to equitable recoupment. *Id.* at 447–48.

The decision in *Dixie Margarine* was held to be "directly in point" by a district court and the reviewing Third Circuit panel in *Electric Storage Battery Co. v. Rothensies,* 152 F.2d 521, 524 (3d Cir.1945).[3] In *Rothensies* a taxpayer sought to recoup excise taxes it improperly paid from 1919 through 1922 to reduce the government's timely claim for an income tax deficiency assessed on the refund the taxpayer received for the same kind of excise taxes it improperly paid from 1923 through 1926. *Id.* at 522–23. To evaluate whether equitable recoupment was proper, the Third Circuit considered whether the taxpayer's

---

**3.** The Third Circuit in *Rothensies* noted *Dixie Margarine* was appealed from the Board of Tax Appeals and that the Supreme Court subsequently held in *C.I.R. v. Gooch Mill. & Elevator Co.,* 320 U.S. 418, 421–22, 64 S.Ct. 184, 186, 88 L.Ed. 139 (1943), the Board of

Tax Appeals has no jurisdiction over equitable recoupment. *Rothensies,* 152 F.2d at 524. Nevertheless, the Third Circuit considered *Dixie Margarine* persuasive regarding the application of equitable recoupment. *Id.*

recoupment claim was part of the same transaction as the government's tax deficiency claim. *Id.* at 523. The court concluded the same transaction requirement was satisfied because the overpayment of taxes from 1919 through 1922 (years closed to examination by the statute of limitations) was due to improperly assessed excise taxes on the same kind of merchandise and on the same improper theory as the excise taxes refunded to the taxpayer, on which the government's claimed income tax deficiency was based. *Id.* at 523. The Third Circuit held this logical connection between the government's claim for tax deficiency and the taxpayer's recoupment claim was sufficient to satisfy the "same transaction" part of the equitable recoupment doctrine. *Id.* at 524. Explaining its decision, the court observed recoupment is based on concepts of fairness and stated it saw no reason to hedge the same transaction requirement within close quarters, particularly where there is a logical connection between the main claim and the recoupment claim. *Id.* at 524.

The Supreme Court reversed the Third Circuit's decision in *Rothensies,* stating the decision below "misapprehends the limits on the doctrine of recoupment as applied to tax law and leads us to state more fully reasons for declining to expand the doctrine beyond the facts of [*Bull v. United States* and *Stone v. White* ]." *Rothensies v. Elec. Storage Battery Co.,* 329 U.S. 296, 301, 67 S.Ct. 271, 273, 91 L.Ed. 296 (1946).[4] The Court explained:

> It probably would be all but intolerable, at least Congress has regarded it as ill-advised, to have an income tax system under which there never would come a

day of final settlement and which required both the taxpayer and the Government to stand ready forever and a day to produce vouchers, prove events, establish values and recall details of all that goes into an income tax contest. Hence a statute of limitation is an almost indispensable element of fairness as well as of practical administration of an income tax policy.

*Id.* Quoting two of its then recent decisions, the Court noted the role of limitations statutes in promoting justice by preventing surprises through revival of stale claims. Turning to the impact of statutes of limitations in the field of taxation, the Court recognized "the taxpayer sometimes gets advantages and at other times the Government gets them. Both hardships to the taxpayers and losses to revenue may be pointed out. They tempt the equity-minded judge to seek for ways of relief in individual cases." *Id.* at 302, 67 S.Ct. at 273 (footnote omitted). The Court then directly rejected the Third Circuit's emphasis of fairness concepts in applying the equitable recoupment doctrine in tax cases, explaining the problems a broad application of the doctrine would cause:

> But if we should approve a doctrine of recoupment of the breadth here applied we would seriously undermine the statute of limitations in tax matters. In many, if not most, cases of asserted deficiency the items which occasion it relate to past years closed by statute, at least as closely as does the item involved here. *Cf. Hall v. United States,* 95 Ct. Cl. 539, 43 F.Supp. 130. The same is true of items which form the basis of refund claims. Every assessment of deficiency and each claim for refund would

4. The Supreme Court in *Rothensies* did not mention the Sixth Circuit's *Dixie Margarine* decision or its discussion of equitable recoupment. In light of the Supreme Court's *Rothensies* decision and the Court's recent discus-sion of equitable recoupment in *United States v. Dalm,* 494 U.S. 596, 110 S.Ct. 1361, 108 L.Ed.2d 548 (1990), this Court doubts the value of *Dixie Margarine* 's discussion of equitable recoupment.

invite a search of the taxpayer's entire tax history for items to recoup.

*Id.* at 302, 67 S.Ct. at 273–74.

*Rothensies* demonstrates the limits of equitable recoupment in tax cases. According to the Supreme Court, equitable recoupment does not "allow one transaction to be offset against another, but only ... permit[s] a transaction which is made subject of suit by a plaintiff to be examined in all its aspects, and judgment to be rendered that does justice in view of the one transaction as a whole." *Id.* at 299, 67 S.Ct. at 272. The Court's discussion of *Bull* and *Stone* demonstrates the importance of the "same transaction" aspect of the equitable recoupment doctrine. According to the Court, the one taxable event being examined in *Bull* was the receipt of money by executors, money that was nearly subjected to both income tax and estate tax. *Id.* at 300, 67 S.Ct. at 272. In *Stone* the refund claim and recoupment involved a single taxable event, the receipt of income for a period by an estate. *Id.* By contrast, the matters examined in *Rothensies* involved a timely filed claim for tax deficiency assessed for tax year 1935 (due to a refund the taxpayer received that year for overpayment of excises taxes paid from 1923 through 1926) and an equitable recoupment claim for overpayment of excise taxes for tax years 1919 through 1922, a refund claim otherwise barred by the statute of limitations. *Id.* at 298, 67 S.Ct. at 272. Although the taxpayer in *Rothensies* improperly paid the excise taxes from 1919 through 1926 on the same merchandise and due to the same misapplication of the excise tax provisions, *Rothensies,* 152 F.2d at 523, the Supreme Court held equitable recoupment of the earlier portion of overpayment was not proper because those amounts sought in recoupment were not of the same transaction constituting the taxable event claimed upon by the plaintiff. *Rothensies,* 329 U.S. at 299, 67 S.Ct. at 272 ("In [*Bull* and *Stone*] a single transaction constituted the taxable event claimed upon and the one considered in recoupment.").

In 1990 the Supreme Court reiterated the limitations on the doctrine of equitable recoupment in federal tax cases in *United States v. Dalm,* 494 U.S. 596, 608, 110 S.Ct. 1361, 1368, 108 L.Ed.2d 548 (1990). In *Dalm* the taxpayer invoked equitable recoupment as the basis for the district court's jurisdiction over her action for refund of a gift tax that was barred by the statute of limitations. *Id.* at 606, 110 S.Ct. at 1367. The Supreme Court denied the taxpayer's attempt to use equitable recoupment to avoid the effect of the statute of limitations on her claim for refund, stating equitable recoupment permits a party to seek recoupment of a time-barred tax claim relating to the same transaction already under examination in a timely filed proceeding. *Id.* Although the decision in *Dalm* centered on the jurisdictional question whether equitable recoupment could provide an independent basis for asserting and reviewing a time-barred tax claim, the Court noted "a court which has jurisdiction over a timely suit for refund may consider an equitable recoupment claim for an earlier tax paid under an inconsistent theory on the same transaction." *Id.* at 610, 110 S.Ct. at 1369.

Recent cases applying equitable recoupment in federal tax cases reflect the narrow scope and application of the doctrine and its "same transaction" requirement. In *IES Industries, Inc. v. United States,* 349 F.3d 574 (8th Cir.2003), the Eighth Circuit recognized equitable recoupment "does not permit 'one transaction to be offset against another,' but will allow a single 'transaction which is made the subject of suit by a plaintiff to be examined in all its aspects, and judgment to be rendered that does justice in view of the one transaction as a whole.'" *Id.* at 582 (quoting *Rothensies,* 329 U.S. at 299, 67 S.Ct. at

271). The facts in *IES* presented a difficult issue concerning the "same transaction" requirement because the taxpayer conducted complicated trades of American Depository Receipts ("ADRs") involving the purchase and sale of the ADRs that generated a capital loss and the payment of related dividends that generated tax liability. *Id.* at 576, 582. The IRS initially denied the taxpayer any tax benefit relating to the ADR trades because it found them to be sham transactions without business purpose. *Id.* at 576. When the Eighth Circuit rejected that analysis, the taxpayer sought refund of overpaid taxes for tax years 1989, 1990, and 1992 resulting from capital-loss carrybacks arising from the ADR transactions, and the United States sought to recoup time-barred taxes for foreign (ADR) dividends IES received in tax years 1991 and 1992. *Id.* at 576, 582. Rather than view the refund for capital-loss carrybacks due the taxpayer and the unassessed taxes owed on foreign dividends as arising from different transactions, the Eight Circuit determined the refund claim and the recoupment claim related to a single transaction, item, or taxable event. *Id.* at 582. Because the taxpayer treated each ADR trade in its entirety as a single transaction, and because the Eighth Circuit's previous ruling—that the ADR trades had business purpose and were not sham transactions—depended upon viewing each ADR transaction as a whole, the court concluded the ADR trades were a single transaction for purposes of equitable recoupment. *Id.* Therefore, the United States was permitted to recoup time-barred taxes owed by the taxpayer in the timely refund proceeding, under the doctrine of equitable recoupment. *Id.* at 576, 582.

In *Coohey v. United States*, 172 F.3d 1060 (8th Cir.1999), taxpayers sought a refund of the Alternative Minimum Tax ("AMT") they paid for tax year 1990, and the government asserted an equitable recoupment claim to recover the amount of AMT credit applied to the taxpayers in tax year 1991. *Id.* at 1062. The Eighth Circuit recognized equitable recoupment required a "single transaction" analysis when it stated "[u]nder the doctrine of equitable recoupment the offsetting amount from the year barred by the statute of limitations (in this case 1991) must be considered *the same transaction* if it arose from the refund due Taxpayers in the year 1990." *Id.* at 1064 (emphasis in original). The Court held the AMT credit given to the taxpayers in 1991 and the assessment of AMT due for 1990 clearly constituted a single transaction because the allowance of the 1991 credit was directly caused by the AMT assessed and paid in 1990. *Id.* Therefore, the United States was able to recoup the 1991 AMT credit from the refund of AMT the taxpayers were due for tax year 1990, under the doctrine of equitable recoupment. *Id.* at 1065.

Finally, in *Parker v. United States*, 110 F.3d 678, 684 (9th Cir.1997), the Ninth Circuit prevented the United States from invoking equitable recoupment to reduce a tax refund due beneficiaries of a settlement trust because it held the refund claim and the recoupment claim involved separate transactions. *Id.* 679, 683. The beneficiaries of the trust sought a refund of estate taxes paid from the corpus of the trust that were owed on a stepfather's estate, taxes paid on the erroneous theory the trust was part of the estate. *Id.* at 681–82. Agreeing the trust should not have been included in the stepfather's estate, the United States argued the trust beneficiaries unjustly benefited because the trust should have been taxed in the mother's estate yet a claim for tax deficiency against the mother's estate was time-barred. *Id.* at 682. Upon these facts, the Eight Circuit held the case involved the tax treatment of two separate estates—the stepfather's and the moth-

er's—rather than a single transaction or taxable event, so equitable recoupment could not apply. *Id.* at 683. The event giving rise to the beneficiaries' claim for refund was the death of the stepfather and the erroneous taxation of his estate. *Id.* at 684. A separate taxable event, such as the mother's death, resulted in tax liability for the mother's estate, so the government's recoupment claim on the mother's estate was based on that separate event. *Id.* The Court considered the *Rothensies* discussion of equitable recoupment and stated courts could not "lump together related, but nonetheless separate transactions so that the facts of a case can be viewed as 'one transaction as a whole.'" *Id.* at 684. Despite the relation between proper taxation of the estates and whether the settlement trust was properly included in the stepfather's estate or the mother's estate, that relation did not satisfy the single transaction requirement of equitable recoupment.

## B. Equitable Recoupment Does Not Apply in this Tax Case

■ The United States' counterclaims seek to recoup unassessed income taxes from Provident Life for tax years 1985 and 1986 by effectively disallowing the deductions Provident Life claimed based on increases in the year-end premium stabilization reserve balances attributable to AMA insurance program open-year experience rating credits that Provident Life computed as of December 31, 1985, and December 31, 1986. Although the IRS determined these amounts are properly treated as unaccrued policyholder dividends that may not be deducted, the United States is time-barred from assessing tax on that theory because of the statute of limitations. Nevertheless, the United States asserts the doctrine of equitable recoupment allows it to reduce Provident Life's refund for tax year 1984 by the unassessed tax liability due for tax years 1985 and 1986 attribut-

able to the open-year experience rating credits.

■ The United States argues the 1984, 1985, and 1986 computation and tax treatment of the AMA insurance program open-year experience rating credits for tax years 1984, 1985, and 1986 constitute a single transaction so that taxes due on the credits for 1985 and 1986 may be recouped from a refund due for tax improperly paid on the credits for tax year 1984. Under equitable recoupment, a time-barred tax claim (in this case, the United States' claims for 1985 and 1986 taxes) may be raised and considered during a timely tax claim proceeding (in this case, Provident Life's claim for refund of tax year 1984 overpayments) if the two claims require examination of a single transaction as a whole. *Rothensies,* 329 U.S. at 299, 67 S.Ct. at 272. Equitable recoupment does not allow one timely transaction to be offset against another, time-barred transaction. *Id.* Because the refund Provident Life seeks and the recoupment the United States seeks are not based on a single transaction, item, or taxable event, *see Dalm,* 494 U.S. at 605 n. 5, 110 S.Ct. at 1367 n. 5, the Court concludes the doctrine of equitable recoupment does not apply. Therefore the Court will **GRANT** Provident Life's motion for summary judgment and will **DENY** the United States' motion for summary judgment.

Provident Life seeks and is entitled to a refund of income tax it overpaid for tax year 1984 because the decrease in open-year experience rating credit reserves computed as of December 31, 1984, is properly treated as unaccrued policyholder dividends rather than as income. The transaction involved in Provident Life's claim for refund is the computation of open-year experience rating credit reserves as of December 31, 1984. In some ways, this transaction is related to other

year-end calculations of open-year credit reserves, including the calculations derived at the end of 1985 and 1986. First, under the Tripartite Agreement, Provident Life is required to calculate open-year experience rating credits and to account for reserves of these amounts according to particular formulas and contractual provisions. Computation of the credits and year-end reserve balances would involve similar or the same procedures each year because Provident Life's obligation to properly compute and apply these credits was the same during each of the relevant years. Further, the year-end balance for open-year experience rating credit reserves for 1984 carries over as the beginning balance for 1985. Therefore, the computation of open-year experience rating credits and the reserve balance as of December 31, 1984, would affect the year-end reserve balances in 1985, 1986, and beyond because the credits are used to stabilize the AMA insurance program premiums as the reserves accumulate and deplete over the course of multiple years.

Despite the relationship that exists between the open-year credit reserve calculations at the end of 1984, 1985, and 1986, the transactions to be considered in the United States' request to recoup unassessed income tax liability for tax years 1985 and 1986 are not the same transaction as the one at issue in Provident Life's claim for refund of income tax overpayment for tax year 1984. The recoupment claims for 1985 and 1986 depend upon the year-end calculation of open-year experience rating credits for those two individual years and the resulting effect the calculations had on the reserve balances. All the facts regarding premiums paid and charges incurred for the 1985 calculation and the 1986 calculation happened after the end of tax year 1984. While the reserve balances for 1985 and 1986 were superficially affected by the starting bal-

ance for 1985 provided by the 1984 year-end balance, the computation and tax treatment of open-year experience rating credits for 1985 and 1986 are wholly separate transactions from the computation and tax treatment of credits for 1984. The United States' counterclaims seek to offset overpayment of income tax based on the 1984 calculation of open-year experience rating credit premium stabilization reserves with the deficiency of income tax based on the 1985 and 1986 calculations of those reserves, but this is not permitted by equitable recoupment. The United States' claim for 1985 and 1986 taxes is closed by the statute of limitations, and equitable recoupment is not available to the government because it does not seek a recoupment on the same transaction, item, or taxable event as Provident Life's claim for refund of taxes it overpaid for tax year 1984.

The result in this case, required by clear Supreme Court precedent, may be criticized based on concerns of the consistent application of income tax provisions and fairness on a micro level. For tax years 1984 through 1992, Provident Life calculated open-year experience rating credits for the AMA insurance program and reported them as income or deductions, depending upon whether the related reserve decreased or increased during the tax year. The IRS subsequently determined the credits are properly treated as unaccrued policyholder dividends that cannot be deducted, and it disallowed most of the deductions Provident Life initially claimed. When this action concludes, the AMA insurance program open-year experience rating credits will have been properly treated as unaccrued policyholder dividends for tax years 1984, part of 1986, 1987 through 1990, and 1992. The only exceptions to this consistent tax treatment occur in tax years 1985, part of 1986, and

1991.[5] For tax years 1985 and part of 1986, these credits currently continue to be treated as deductible for two reasons: a tax deficiency was not assessed within the limitations period, and equitable recoupment does not apply to resolve the inconsistency in this action. While inconsistent tax treatment of similar transactions, items, or events in a sequence of years is generally undesirable, the doctrine of equitable recoupment applies in limited circumstances involving only a single transaction, and that situation is not present in this case.

The situation and outcome in this case is similar to those present in *Rothensies*. The *Rothensies* case involved the improper payment of excise taxes over the course of several sequential tax years. The time for asserting a refund claim for the first few years expired, and the taxpayer received a refund of taxes it overpaid for tax years immediately following the years closed by the statute of limitations. When the United States asserted a deficiency against the taxpayer based on the excise tax refund the taxpayer received, the taxpayer unsuccessfully asserted equitable recoupment to receive a refund of excise taxes it paid in the closed tax years. Despite the relationship between the refund the taxpayer received and the inconsistent excise tax treatment that continued to exist in the closed years, the same transaction requirement of equitable recoupment prevented the taxpayer from correcting the inconsistency in the closed years. In this case, the United States rather than the taxpayer finds itself on the "losing" end of the statute of limitations in a tax case, but the Supreme Court contemplated this situation in *Rothensies* and specifically refused to expand the doctrine of equitable recoup-

ment on concerns of consistency and fairness in an individual case. Accordingly, this Court will accept the inconsistency that accompanies the proper application of the "same transaction" requirement of equitable recoupment and concludes the United States cannot prevail on its equitable recoupment counterclaims because the doctrine does not apply under the circumstances of this case.

## IV. CONCLUSION

For the reasons stated above, the Court will **DISMISS WITHOUT PREJUDICE** the United States' counterclaims based on mitigation under 26 U.S.C. §§ 1311–1314, pursuant to Fed.R.Civ.P. 41(a), (c). Further, the Court will **GRANT** Provident Life's motion for summary judgment for a refund of 1984 income tax in the amount of $2,717,681 plus overpayment interest and statutory interest (Court File No. 27) and will **DENY** the United States' motion for summary judgment on its counterclaims for equitable recoupment of unassessed income tax liabilities for 1985 and 1986 (Court File No. 30). Because no further matters will remain for adjudication, the Court will **DIRECT** the Clerk to **CLOSE** this case.

An Order shall enter.

### JUDGMENT ORDER

In accordance with the accompanying memorandum, the Court **GRANTS** Provident Life's motion for summary judgment for a refund of 1984 income tax in the amount of $2,717,681 plus overpayment interest and statutory interest (Court File No. 27) and **DENIES** the United States' motion for summary judgment on its counterclaims for equitable recoupment of

---

**5.** For tax year 1991, Provident Life is seeking in another proceeding to have the credits treated as unaccrued policyholder dividends rather than as income, consistent with the theory applied by the IRS and with the theory underlying Provident Life's claim for refund of the 1984 tax overpayment.

unassessed income tax liabilities for 1985 and 1986 (Court File No. 30). Further, the Court **DISMISSES WITHOUT PREJUDICE** the United States' counterclaims based on mitigation under 26 U.S.C. §§ 1311–1314, pursuant to Fed.R.Civ.P. 41(a), (c). Because no further matters remain for adjudication, the Court **DIRECTS** ·the Clerk to **CLOSE** this case.

**SO ORDERED.**