372 F.Supp.2d 1145 (2005)
ESTATE OF Kathryn M. BUDER, et al., Plaintiffs,
v.
UNITED STATES of America, Defendant.
No. 4:03CV01860 ERW.
United States District Court, E.D. Missouri, Eastern Division.
February 18, 2005.
*1146 David G. Ott, Jeffery T. McPherson, John R. Barsanti, Jr., Paul E. Kovacs, Armstrong Teasdale, LLP, St. Louis, MO, for Plaintiffs.
Anne Norris Graham, U.S. Department of Justice, Washington, DC, for Defendant.

MEMORANDUM AND ORDER
WEBBER, District Judge.
This matter comes before the Court upon United States' Motion for Judgment on the Pleadings [doc. # 10] and Plaintiffs' Motion for Summary Judgment [doc. # 17]. A hearing was held on January 12, 2005, and the Court heard arguments from the parties on the Motions.
I. BACKGROUND FACTS[1]
In November 1984, G.A. Buder, Jr. died, leaving a will and accompanying codicil which included provisions for certain charitable organizations, his wife, his children, and his grandchildren.[2] In all, there were *1147 thirty-one legatees of G.A. Buder Jr.'s estate. G.A. Buder, Jr.'s will created a trust from the residue of the estate for the benefit of his wife and children ("Residuary Trust").[3] At the time of his death, G.A. Buder Jr.'s estate elected to treat the Residuary Trust as Qualified Terminable Interest Property ("QTIP") and claimed a marital deduction for the value of the Residuary Trust. G.A. Buder Jr.'s estate filed its federal estate tax return in 1986, showing a tax due of $156,648. The Internal Revenue Service ("IRS") audited the return and asserted a deficiency based upon disallowing a certain charitable deduction. G.A. Buder Jr.'s estate paid the deficiency and then filed a claim for a refund. The IRS disallowed the claim, and G.A. Buder Jr.'s estate filed suit for the refund, putting the charitable deduction at issue. See Buder v. United States, 7 F.3d 1382 (8th Cir.1993). During the litigation over the charitable deduction, the United States raised an affirmative set-off defense that the Residuary Trust did not qualify as a QTIP. However, the United States did not raise this issue until ten days prior to trial and the court refused to consider the set-off defense because it was untimely and not pleaded.[4] The court allowed the charitable deduction and did not permit any set-off defense; on appeal, the Eighth Circuit affirmed.
Kathryn Buder, G.A. Buder Jr.'s wife, died in January 2000. In October 2000, Kathryn Buder's personal representatives included the Residuary Trust in her estate's federal estate tax return.[5] On November 22, 2002, Plaintiffs filed claims for refunds of federal estate tax in the amount of $18,043,530.17, plus interest.[6]
*1148 Pursuant to G.A. Buder, Jr.'s will, on the death of Kathryn Buder, the Residuary Trust was to be divided into such number of equal parts as would provide trusts for G.A. Buder, III, Theodore Buder, and Marshall Buder ("the Buder sons") and conditionally for his daughter, Dorothy Buder.[7] Following Kathryn Buder's death, Dorothy Buder claimed that she was entitled to share in the Residuary Trust, a claim her three brothers contested in court. Dorothy Buder and her three brothers reached a settlement and Dorothy Buder released all claims she had with respect to the Residuary Trust. As a result of this release, the Residuary Trust was divided into three trusts (the "Resulting Trusts"). Each Resulting Trust had one of the brothers as its primary beneficiary for his life, with the remainder to be distributed to the primary beneficiary's descendants. Thereafter, the trustees of the Resulting Trusts exercised their powers to terminate the Resulting Trusts and each reached a settlement agreement with his respective descendants whereby each descendent received a payment in exchange for releasing all claims against the Resulting Trusts.
On December 30, 2003, Plaintiffs brought suit in this Court to recover the refund they claim is due on the Kathryn Buder estate tax. Defendant USA has moved for Judgment on the Pleadings, raising equitable recoupment as an affirmative defense, and Plaintiffs have moved for Summary Judgment.
II. SUMMARY JUDGMENT STANDARD
Pursuant to Federal Rule of Civil Procedure 12, "[a]fter the pleadings are closed but within which time as not to delay the trial, any party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). In determining whether judgment on the pleadings is appropriate, a court must limit its consideration to the pleadings and matters within the public record. Faibisch v. Univ. of Minn., 304 F.3d 797, 802 (8th Cir.2002). If "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Fed.R.Civ.P. 12(c). If the motion is treated as one for summary judgment, the parties must be given reasonable opportunity to present material pertinent to a summary judgment motion. Id.
Here, the Court will treat Defendant's motion for judgment on the pleadings as a motion for summary judgment. When Defendant moved for judgment on the pleadings, Defendant relied only on the pleadings and on matters contained in the public record. However, Defendant later supplemented its motion in accordance with this Court's order to do so. The supplement provides various calculations and supporting documents which do not appear to be part of the public record. Defendant has presented matters outside the pleadings, the Court has considered those materials, and the parties have had a reasonable opportunity to present material pertinent to a motion for summary judgment. Therefore, the Court will treat Defendant's motion for judgment on the pleadings as a motion for summary judgment. Thus, in this case, the Court is presented with cross-motions for summary judgment.
Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). See *1149 Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The United States Supreme Court has noted that "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules as a whole, which are designed to `secure the just, speedy and inexpensive determination of every action.'" Id. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1). "By its terms, [Rule 56(c)(1)] provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one such that "a reasonable jury could return a verdict for the nonmoving party." Id. Further, if the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, ... there can be `no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322-23, 106 S.Ct. 2548.
The initial burden of proof in a motion for summary judgment is placed on the moving party to establish the non-existence of any genuine issue of fact that is material to a judgment in its favor. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir.1988). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. Anderson, 477 U.S. at 249, 106 S.Ct. 2505. When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(e). To meet its burden, the non-moving party may not rest on the pleadings alone and must "do more than simply show there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In fact, the non-moving party must show there is sufficient evidence favoring the non-moving party which would enable a jury to return a verdict for it. Anderson, 477 U.S. at 249, 106 S.Ct. 2505; Celotex, 477 U.S. at 324, 106 S.Ct. 2548. "If the non-moving party fails to produce such evidence, summary judgment is proper." Olson v. Pennzoil Co., 943 F.2d 881, 883 (8th Cir.1991).
III. ANALYSIS
In its Motion, Defendant states that the Residuary Trust should have been taxed with the G.A. Buder, Jr. Estate, but that it was not due to the G.A. Buder Jr. Estate's QTIP election. According to Defendant, the Court should apply the doctrine of equitable recoupment to reduce the refund due the Kathryn Buder Estate by the G.A. Buder, Jr. Estate's underpayment of tax. Plaintiffs oppose the Motion, and make their own motion for summary judgment. They argue that Defendant's claim for equitable recoupment should be rejected. Plaintiffs argue that they should be awarded a full refund for the estate taxes paid by the Kathryn Buder estate on the Residuary Trust. Thus, the parties agree that the QTIP election made by the G.A. Buder, Jr. estate was improper. They further agree that the Residuary Trust therefore should not have been included in the Kathryn Buder estate. Accordingly, it is *1150 undisputed that Plaintiffs are entitled to a refund in the amount of $18,043,530.17, plus interest from October 19, 2000, the date the Kathryn Buder estate's tax return was due. The parties disagree as to whether equitable recoupment principles prevent Plaintiffs from recovering this amount. They also disagree about how to compute any equitable recoupment which may be due.
A. Qualified Terminable Interest in Property ("QTIP")
Under the tax laws, the value of a decedent's gross estate includes the property that person owned at the time of his or her death minus a marital deduction for any property passing to the surviving spouse. See I.R.C. § 2031(a), § 2056(a). However, transfers of terminable interests (e.g. life estates) do not qualify for the marital deduction unless the interest is a qualified terminable interest in property as defined by the code ("QTIP"). See I.R.C. § 2056(b)(1), § 2056(b)(7). For property to qualify as a QTIP, among other requirements, the surviving spouse must be entitled to receive all the income from the property. I.R.C. § 2056(b)(7)(B)(ii)(I). The QTIP provisions reflect Congress's intent to expand the classes of property eligible for the marital deduction. See Estate of Robertson v. Comm'r, 15 F.3d 779, 783 (8th Cir.1994).
The consequence of a QTIP election is that the property, which was untaxed at the time of the first spouse's death, is later taxed with the surviving spouse's estate. See Boris Bittker & Lawrence Lokken, Federal Taxation of Income, Estates & Gifts (2005), ¶ 129.3. Essentially, the marital deduction taken at the time of the first spouse's death is allowed "on the condition that the property be subject to gift or estate tax when it passes from the spouse to someone else." Id. This framework reflects Congress's intent that married couples be treated as one economic unit for marital deduction purposes. Id.; see also Estate of Letts v. Comm'r, 109 T.C. 290, 295, 1997 WL 727721 (1997), aff'd without opinion, 212 F.3d 600 (11th Cir.2000) (basic policy of the marital deduction is "property that passes untaxed from a predeceasing spouse to a surviving spouse is included in the estate of the surviving spouse"). The QTIP provision reflects Congress's intention that the tax laws "be neutral as between spouses so long as the property [is] taxed in either the estate of the first to die or the estate of the second to die." Estate of Robertson, 15 F.3d at 782; see also id. at 783 ("Congress further believed that as between spouses so long as the property was taxed in the first or the second estate the estate tax laws should not dictate how a person decided to dispose of his or her property.").
B. Equitable Recoupment
Equitable recoupment "finds its roots in the equitable concerns of unjust enrichment." Coohey v. United States, 172 F.3d 1060, 1064 (8th Cir.1999). The doctrine "has been applied in tax cases where the bar of the statute of limitations has resulted in inequitable consequences to either taxpayers or the government." Estate of Vitt v. United States, 706 F.2d 871, 874 (8th Cir.1983). See also Coohey, 172 F.3d at 1062 (application of equitable recoupment is a means of avoiding unjust result caused by enforcement of statute of limitations); Crossett Lumber Co. v. United States, 87 F.2d 930, 932 (8th Cir.1937) ("The basis of the doctrine is that principle of natural justice which denounces a claim as unjust, immoral, and fraudulent when the claimant is at the same time wrongfully withholding money which in equity belongs to the other party."). Importantly, the doctrine of equitable recoupment has been limited by the Supreme Court in an attempt to avoid "seriously undermin[ing] the statute of limitations in tax matters." *1151 Rothensies v. Elec. Storage Battery Co., 329 U.S. 296, 302, 67 S.Ct. 271, 91 L.Ed. 296 (1946). The Supreme Court has emphasized the importance of finality in tax matters, stressing that "a statute of limitation is an almost indispensable element of fairness as well as of practical administration of an income tax policy." Id. at 301, 67 S.Ct. 271.
Thus, in certain circumstances, a statute of limitations may be disregarded "in order to further `the public interest that no one should be permitted to avoid his just share of the tax burden except by positive command of law.'" IES Indust., Inc. v. United States, 349 F.3d 574, 581 (8th Cir.2003) (quoting Stone v. White, 301 U.S. 532, 537, 57 S.Ct. 851, 81 L.Ed. 1265 (1937)). Equitable recoupment can be raised as an affirmative defense by both taxpayers and the government alike. Id.; see also Parker v. United States, 110 F.3d 678, 682 (9th Cir.1997) (doctrine "prevents unjust enrichment and works as a setoff when invoked by the taxpayer to recover taxes paid twice, or by the government to prohibit tax avoidance"). Because equitable recoupment is an affirmative defense, the party raising the defense has the burden of proving that it is entitled to the requested relief. See Smith v. United States, 373 F.2d 419, 421 (4th Cir.1966). The doctrine has three elements: (1) a single transaction subject to two taxes on inconsistent legal theories; (2) an expired statute of limitations for the tax liability or refund; and (3) a sufficient identity of interest between the parties. See Rothensies, 329 U.S. at 299, 67 S.Ct. 271; Coohey, 172 F.3d at 1062; Estate of Vitt, 706 F.2d at 875 n. 3.
Equitable recoupment is an equitable remedy. As an initial matter, the Court notes that this unique case presents assorted equity concerns. If the statute of limitations on the G.A. Buder, Jr. estate is enforced, Defendant will suffer inequitable consequences. At the time estate tax was due on the G.A. Buder estate, Plaintiffs successfully claimed that the Residuary Trust was a QTIP, thus deferring tax on the property until the time of Kathryn Buder's death. Now, after the passing of the statute of limitations on the G.A. Buder, Jr. estate, Plaintiffs have successfully claimed that the Residuary Trust was not a QTIP and that it should not have been included in Kathryn Buder's estate, but that it should have been included in G.A. Buder's estate instead. In the absence of equitable recoupment, the Residuary Trust will escape taxation altogether, a result that would be against clear congressional intent and a result that would permit Plaintiffs to profit from their own erroneous QTIP election. However, if, as a result of equitable recoupment, the statute of limitations on the G.A. Buder, Jr. estate is not enforced, Plaintiffs will bear the burden of an estate tax that was the subject of an audit and that should have been collected two decades ago, a result that clearly undermines the important policy of finality in tax matters.
1. Same Transaction, Item, or Event Subject to Inconsistent Tax Treatment
Equitable recoupment does not allow one transaction to be offset against another transaction; instead, it "permit[s] a transaction which is made subject of suit by a plaintiff to be examined in all its aspects, and judgment to be rendered that does justice in view of the one transaction as a whole." Rothensies, 329 U.S. at 299, 67 S.Ct. 271. In order to apply equitable recoupment, there must be a single transaction or taxable event that has been subjected to two inconsistent taxes. Id. at 300, 67 S.Ct. 271; see also Coohey, 172 F.3d at 1064. Therefore, the doctrine applies only when the offsetting amount from the time-barred year results from the *1152 same transaction giving rise to the refund or deficiency due in the open year. Estate of Vitt, 706 F.2d at 874-75; see also IES Indust., 349 F.3d at 582 (considering "each trade as a whole" rather than as separate purchase, payment, and sale transactions, thereby treating refunds for capital-loss carrybacks and taxes owed on foreign dividends as single transaction).
Here, Defendant states that the same transaction, item, or event requirement is satisfied because the creation of the Residuary Trust constitutes a single taxable event. According to Defendant, the taxable event in this case is the transfer of the Residuary Trust from G.A. Buder, Jr. to his sons. In Defendant's view, the erroneous QTIP election has made this event subject to two inconsistent theories of tax treatment: estate tax as part of the G.A. Buder, Jr. estate when the Residuary Trust passed from G.A. Buder, Jr. at his death, or estate tax as part of the Kathryn Buder estate when her life estate in the property terminated at her death. Plaintiffs disagree with Defendant's characterization. According to Plaintiffs, this case involves two items: the Residuary Trust on the date of G.A. Buder, Jr's death and the Residuary Trust on the date of Kathryn Buder's death, both of which had different assets and values.[8] Moreover, Plaintiffs argue that this case involves two taxable events: the death of G.A. Buder, Jr. and the death of Kathryn Buder.[9]
Close examination of Article VI of G.A. Buder, Jr.'s will reveals that the "same transaction, item, or event" requirement is satisfied in this case. In Vitt, the Eighth Circuit found the doctrine applicable when "the offsetting amount from the time-barred year results from the same transaction giving rise to the refund or deficiency due in the open year." Estate of Vitt, 706 F.2d at 874-75. Here, at the time of his death, G.A. Buder, Jr. created the Residuary Trust, through which he transferred the residuary of his estate to his sons and Boatmen Bank in trust. "[A]ny portion or all of the net income of the trust estate," as the trustees deemed advisable, was to be paid to Kathryn Buder during her life. After the death of Kathryn Buder, the trust would be divided for the benefit of the sons. But for the QTIP election, the property would have been taxed with the G.A. Buder, Jr. estate. The QTIP election caused the Residuary Trust to qualify for deferred tax treatment so that it would be subject to estate tax with the Kathryn Buder estate. Contrary to Plaintiffs' claim, the focus of this Court's inquiry is on the Residuary Trust and the *1153 appropriate estate with which it should have been taxed. The creation of the trust, which disposed of G.A. Buder, Jr.'s residual property, and the resulting applicable tax is the single event at issue in this case.
In addition to establishing that there is a single taxable event at issue in this case, Defendant must also demonstrate that the event in question is subject to inconsistent tax treatment. The Court finds that Defendant has demonstrated the required inconsistency. In Stone v. White, 301 U.S. 532, 57 S.Ct. 851, 81 L.Ed. 1265 (1937), the United States Supreme Court found equitable recoupment to be applicable under somewhat analogous factual circumstances. In Stone, certain trustees paid a tax on the income of the trust estate; however, the tax should have been paid by the sole beneficiary of the trust rather than by the trustees. Stone, 301 U.S. at 533, 57 S.Ct. 851. The trustees brought suit for refund of the tax which had been erroneously collected, and, by the time suit was brought, any claim the government could have made against the beneficiary was barred by the statute of limitations. Id. The court allowed the government to use the defense of equitable recoupment to avoid paying the refund due to the trustees. Id. at 539, 57 S.Ct. 851. Similarly, here, Kathryn Buder's estate erroneously paid a tax on the Residuary Estate that should have been paid by the G.A. Buder, Jr. estate. Any claim the government might make against the G.A. Buder, Jr. estate for the deficiency, however, is time-barred. Under these circumstances, the Court finds that the "inconsistent tax treatment" requirement is satisfied.[10]
Thus, because the creation of the Residuary Trust and the resulting tax on that property is a single event, and because the event is subject to inconsistent tax treatment, the Court finds that Defendant has satisfied the first prong of the equitable recoupment doctrine.
2. Barred by Statute of Limitations
Because the application of equitable recoupment is a "means of avoiding an unjust result caused by the enforcement of the statute of limitations," the doctrine "applies only when the statute of limitations has expired for assessment or collection of the tax liability at issue." Coohey, 172 F.3d at 1062. Here, the parties agree that the statute of limitations for assessing additional tax against the G.A. Buder, Jr. estate has expired. The parties disagree, however, as to whether enforcement of the statute of limitations in this case will lead to an unjust result. Plaintiffs argue that Defendant has not suffered any inequity and that an equitable remedy is therefore not available to Defendant in this case. According to Plaintiffs, Defendant completed its audit of the G.A. Buder, Jr. *1154 estate in a timely manner and has admitted that, based on the language of the will itself, it is apparent that the QTIP election was improper. Plaintiffs also point out that Defendant failed to timely raise the issue of the improper QTIP election at the time of the prior litigation.
First, Plaintiffs' contention that Defendant has suffered no inequity here is without merit. As in Stone, without equitable recoupment, the Residuary Trust will escape taxation altogether, resulting in a windfall for Plaintiffs. See Stone, 301 U.S. at 537, 57 S.Ct. 851.[11] In making the QTIP election, Plaintiffs chose to defer tax on the Residuary Trust until the time of Kathryn Buder's death. Neither party could have reasonably expected that the Residuary Trust would escape taxation altogether. Thus, this Court cannot agree with Plaintiffs that Defendant will suffer no inequity if equitable recoupment is denied. Second, as explained below, Plaintiffs' other arguments on this issue are likewise unpersuasive and do not demonstrate that Defendant has failed to satisfy the second prong of the equitable recoupment doctrine; moreover, they do not prohibit the application of equitable recoupment in this case.
Plaintiffs argue that Defendant has waived its equitable recoupment argument because it did not raise the QTIP issue when it had the opportunity to do so. Plaintiffs cite no case, and this Court has found none, which can be read to support the proposition that failure to impose a tax before the statute of limitations has run means that a party has waived its right to assert the defense of equitable recoupment in a later refund action. In the two cases that Plaintiffs cite to support their assertion that a party cannot assert equitable recoupment when it has waived its right to relief, the courts declined to apply equitable recoupment because there was no inconsistency between he two taxes at issue. See In re Pransky, 318 F.3d 536, 544-45 (3d Cir.2003); Diesel Performance, Inc. v. Comm'r, 16 Fed.Appx. 718, 2001 WL 881741 (9th Cir.2001). Indeed, the very nature of equitable recoupment is such that it allows a tax or refund that should have been collected or applied for at some prior time to be recouped even though it was not collected or demanded at the appropriate time. See, e.g., Estate of Vitt, 706 F.2d at 873 (equitable recoupment permitted where estate failed to make a claim for a refund within the applicable limitations period because "apparently unaware" of a change in law that would permit such a claim); Estate of Branson v. Comm'r, 264 F.3d 904, 908 (9th Cir.2001) (allowing equitable recoupment even where estate's beneficiary failed to file refund claim for her overpayment within the applicable limitations period). Moreover, while Defendant may have waived its right to a setoff defense in the prior litigation by failing to raise the issue of the improper QTIP election in a timely manner, this does not mean that Defendant has waived its right to assert equitable recoupment in the current litigation. Whether the QTIP election was proper is not the issue in this case. Indeed, both parties agree that the QTIP election was improper and that the Residuary Trust should have been taxed with the G.A. Buder, Jr. estate. The issue here is whether Defendant can raise equitable *1155 recoupment as a defense in the current refund action. The Court finds that it can.
Next, Plaintiffs argue that the doctrine of res judicata bars Defendant from relitigating claims and defenses that were raised or that could have been raised in prior litigation. Plaintiffs state that Defendant could have raised the improper QTIP election in the prior litigation and that, in fact, Defendant did attempt to do so, but failed to raise it in time. Res judicata bars a party from relitigating claims and defenses that were raised or that could have been raised in a previous litigation. Lane v. Peterson, 899 F.2d 737, 742 (8th Cir.1990) (listing requirements for res judicata). As Defendant points out, res judicata precludes only counterclaims that were compulsory in the prior action, and additional deficiencies are not compulsory counterclaims. See Hemmings v. Comm'r, 104 T.C. 221, 234-35, 1995 WL 44587 ("courts that have considered the issue have uniformly rejected the contention that the claim of the United States for unassessed additional taxes in a refund action is a compulsory counterclaim"). Thus, res judicata does not prevent Defendant from raising the affirmative defense of equitable recoupment in this action.
Third, Plaintiffs argue that the doctrine of judicial estoppel prohibits Defendant from taking inconsistent positions in the same or related litigation. Plaintiffs state that Defendant asserted in the prior litigation that the QTIP election should be enforced against the G.A. Buder, Jr. estate and that Defendant should not now be able to claim that a different taxpayer should be liable. Judicial estoppel precludes a party from taking inconsistent positions in the same or related litigations. New Hampshire v. Maine, 532 U.S. 742, 749, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001). Defendant's position in this action (i.e. that the QTIP election was improper and that the Residuary Trust should have been taxed with the G.A. Buder, Jr. estate) is not inconsistent with its position in the prior litigation. The subject of the prior litigation was whether a certain charitable deduction was proper; the QTIP election was not at issue. In that litigation, Defendant belatedly raised a set-off defense that the QTIP election was improper. Similarly, in this case, Defendant asserts that the QTIP election was improper. Defendant's position is not inconsistent. Moreover, judicial estoppel is not applicable here because the court in the prior litigation did not rule on the QTIP issue, due to Defendant's delay in raising it. See id. at 750-51, 121 S.Ct. 1808 (courts inquire whether the party has succeeded in persuading prior court to accept party's earlier position; absent success in prior proceeding, a later inconsistent position does not lead to risk of inconsistent determinations and poses little threat to judicial integrity).[12]
Because the claim against the G.A. Buder, Jr. estate is clearly barred by the statute of limitations, the Court finds that Defendant has satisfied the second prong of the equitable recoupment doctrine.
3. Identity of Interest
The final requirement of equitable recoupment is that there must be sufficient identity of interest between the parties. This final requirement of equitable recoupment has not been clearly defined by the courts. See Camilla E. Watson, Equitable Recoupment: Revisiting an Old and Inconsistent *1156 Remedy, 65 Fordham L.Rev. 691, 758 (1996). The Eighth Circuit has stated that the "[a]bsence of an identity of interest may result in the denial of recoupment." Estate of Vitt, 706 F.2d at 875 n. 3. In at least some cases, courts have not required absolute identity of interest. See, e.g., Estate of Vitt, 706 F.2d at 875 n. 3 (sufficient identity of interest between husband's estate and wife's estate); O'Brien v. United States, 766 F.2d 1038, 1050 (7th Cir.1985) (gathering numerous cases and stating that courts have found sufficient identity of interest between sole beneficiary of estate and trustees of estate, husband's estate and surviving spouse, husband's estate and wife's estate, decedent and his estate, and estate and all beneficiaries of the estate). In other cases, however, courts have declined to apply equitable recoupment where they have found the identity of interest element to be insufficient. See, e.g., Kramer v. United States, 186 Ct.Cl. 684, 406 F.2d 1363, 1371 (1969) (insufficient identity of interest because possibility that third parties would be detrimentally affected by the equitable recoupment). In cases involving more than one taxpayer, there must be "sufficient identity of interest ... [such] that the taxpayers should be treated as one." Branson v. Comm'r, 113 T.C. 6, 36, 1999 WL 708031 (U.S.Tax Ct.1999). In those cases where courts have permitted equitable recoupment despite a lack of absolute identity of interest, they generally appear to focus on whether, in a practical sense, the two taxpayers should be treated as one. For example, in the early case of Stone v. White, certain testamentary trustees brought a claim for a refund for a tax they had previously paid on income of the trust estate. Stone, 301 U.S. at 533, 57 S.Ct. 851. In reality, the tax should have been charged to the beneficiary of the trust instead. Id. By the time the mistake was discovered, the statute of limitations for taxing the income to the beneficiary had already expired. Id. In this refund action, the court apparently found sufficient identity of interests because the trustees were seeking a refund of money that had been paid from the same trust on which the sole beneficiary drew funds. Id. at 535, 57 S.Ct. 851. The court concluded that "any recovery in th[e] action w[ould] be income to the beneficiary, and w[ould] deprive the government of a tax to which it is justly entitled and enable the beneficiary to escape a tax which she should have paid."[13]Id. Further, in Vitt, equitable recoupment was permitted as between a husband's and wife's estates. In Vitt, a husband and wife had conveyed a certain property, retaining a life estate for their joint lives and for the life of the survivor. Estate of Vitt, 706 F.2d at 872-73. Their respective interests in the property were taxed inconsistently, and the court concluded that the wife's estate should be permitted to recover the overpayment of tax and interest made by the husband's estate at the time of his earlier death. Id. at 874. In a footnote, the court rejected the government's contention that there was insufficient identity of interest between the husband and wife.[14]Id. at 875 n. 3.
*1157 In other cases, however, courts have found an insufficient identity of interest and have not permitted equitable recoupment as an affirmative defense. For example, in Kramer v. United States, a case cited by the Eighth Circuit in Vitt, executors of a certain estate brought suit for a refund based on their claim that the government had wrongfully included in the decedent's gross estate the value of the right of decedent's widow to receive payments from his employer after his death; the court agreed that the estate was entitled to a refund. Kramer, 406 F.2d at 1364. The court then addressed the government's argument that it was entitled to recoup the income tax benefits decedent's widow had received as a result of certain deductions made due to the payment of the estate tax:
Mrs. Kramer was bequeathed the residue of decedent's estate "for the term of her natural life," and the remainder at her death was left to their children. Under Ohio law she is not considered the sole residuary legatee, but a life tenant with an unlimited power to dispose of the proceeds. She is a trustee or quasi-trustee of the property. She is bringing this suit in her capacity as co-executor of the estate and the residuary estate will benefit from the recovery of the estate taxes. Mrs. Kramer's personal income benefitted from the income tax refund, but other persons, i.e., the remaindermen, have a vested interest in the residuary estate. If Mrs. Kramer were the sole beneficiary then Stone v. White would be applicable and the defendant would be entitled to an equitable recoupment. Here, however, there is a possibility that the remaindermen will also benefit from the estate tax refund, therefore the doctrine of equitable recoupment is not applicable.
Kramer, 406 F.2d at 1371.[15] Similarly, in Parker v. United States, a case heavily relied upon by Plaintiffs here, the Ninth Circuit found equitable recoupment inapplicable. In Parker, heirs of their mother's estate brought suit against their mother's husband for embezzling funds and breaching certain fiduciary duties. Parker v. United States, 110 F.3d 678, 679 (9th Cir.1997). Four years after the death of the mother, the husband settled with the heirs by creating a trust, naming himself the lifetime beneficiary and naming the heirs as remainder beneficiaries. Id. At the husband's death, the settlement trust was included in his estate, and the estate taxes were paid from the trust corpus. Id. The heirs, as the settlement trust's beneficiaries, claimed that they were entitled to a refund because the settlement trust was *1158 not includible in the husband's estate and should not have paid the estate tax. Id. at 679-80. The government attempted to recoup the refund due to the settlement trust against the additional estate tax the mother's estate would have paid if the settlement trust had been included in her estate. Id. The court found that equitable recoupment was inapplicable because there was insufficient identity of interest, more than one transaction, no inconsistent treatment, and no equitable reason to deny the refund. Id. at 685.
Here, Defendant states that there is a sufficient identity of interest between the G.A. Buder, Jr. estate and the Kathryn Buder estate, thereby satisfying the third equitable recoupment requirement. Plaintiffs contend that the identity of interest requirement is not met. According to Plaintiffs, there is no identity of interest between the thirty-one legatees of G.A. Buder, Jr.'s estate and the Plaintiffs in this action. Plaintiffs contend that Defendant must demonstrate that the parties who would have been detrimentally affected by the disallowance of a marital deduction to the G.A. Buder, Jr. estate are the same parties who will benefit from the refund due to the Kathryn Buder estate.
The parties have cited no case directly on point, and the Court has found none, which might aid the Court in determining whether the identity of interest requirement has been satisfied here. In some respects, the instant case mirrors the circumstances in Vitt. In Vitt, two estates shared a common piece of property that had been subjected to inconsistent taxes. The two taxpayers (i.e. the husband's estate and the wife's estate) were treated as one for the purpose of equitable recoupment. Here, as in Vitt, there are two taxpayers (i.e. G.A. Buder, Jr.'s estate and Kathryn Buder's estate) and a single item of property (i.e. the Residuary Trust), the value of which was deducted from one estate and included in the other. As in Vitt, the circumstances of this case make it clear that "the taxpayers should be treated as one." Branson, 113 T.C. at 36. At the time of his death, the G.A. Buder, Jr. estate chose to take a marital deduction for the value of the Residuary Trust, in effect choosing to defer the taxes due on the property until the time of Kathryn Buder's death. The two estates are clearly connected: the Kathryn Buder estate paid estate tax on the Residuary Trust because the G.A. Buder estate chose to defer the tax on the property. Thus, it is clear that these taxpayers should be treated as one for the purposes of equitable recoupment.
As Plaintiffs point out, unlike the circumstances in Vitt where the beneficiaries of the husband's estate were exactly the same as the beneficiaries of the wife's estate, the beneficiaries of the G.A. Buder, Jr. estate are not exactly the same as the beneficiaries of the Kathryn Buder estate. This fact alone is not enough to deny the application of equitable recoupment, but it does impact the equitable recoupment analysis in this case. There is little doubt that the primary beneficiaries of the two estates are the same (i.e. G.A. Buder, III, Theodore Buder, and Marshall Buder). However, there are some beneficiaries of the G.A. Buder, Jr. estate who benefitted from the marital deduction, but who are not parties to the instant action and thus would not share in the tax burden imposed by equitable recoupment. That is, while it is true that the same parties who benefitted from the improper marital deduction at the time of G.A. Buder, Jr.'s death will suffer an offsetting detriment as a result of the recoupment, the offsetting detriment will be disproportionate if the full amount of the tax that should have been imposed on the G.A. Buder, Jr.'s estate is imposed on Plaintiffs here.
The Court finds that there is a sufficient identity of interest between the two estates *1159 such that the two should be treated as one taxpayer. However, full recoupment is not equitably permissible under these circumstances given that third parties not currently before this Court derived a substantial benefit from the deduction, and these third parties cannot be made to share in the detriment of the recoupment of the tax.[16]
C. Scope of Recoupment
1. Amount of Tax
If the Residuary Trust had been taxed with the G.A. Buder, Jr. estate, the estate would have owed an additional $9,417,216.00 in federal estate tax. Further, the parties agree that Plaintiffs are entitled to an $18,043,530.17 refund, plus statutory interest, due to the Kathryn Buder estate's overpayment.[17] Plaintiffs initially opposed the computations submitted by Defendant by raising two problems with the working papers submitted as exhibits and intended to support Defendant's computations. However, Defendant sufficiently addressed these issues in its reply memorandum such that there now exists no genuine issue as to any material fact with regard to the bases for Defendant's computations.[18]
*1160 Plaintiffs argue that Defendant cannot recoup the entire $9,417,216.00 that should have been paid by the G.A. Buder, Jr. estate. They state that any recoupment that Defendant may be able to claim must be limited to no more than $5,221,846.00.[19] According to Plaintiffs, it would be inequitable to allow the full amount of recoupment computed by Defendant because such a computation places the entire burden of the tax on Plaintiffs alone, despite the fact that, had the tax been imposed at the time of G.A. Buder, Jr.'s death, the tax burden would have been shared by other beneficiaries of the G.A. Buder, Jr. estate. Plaintiffs argue that, if the Court allows equitable recoupment here, it should take this into account. In all, Plaintiffs conclude that they cannot be responsible for paying any more than 55.45 percent of the tax due on the G.A. Buder, Jr. estate. In response, Defendant asserts that the existence of additional legatees is immaterial. According to Defendant, had the Residuary Trust actually qualified as a QTIP as represented by Plaintiffs, Plaintiffs alone would have paid the tax on the Residuary Trust when it was included in the Kathryn Buder estate. Defendant urges that it was Plaintiffs' erroneous characterization of the Residuary Trust as a QTIP and erroneous claim of the marital deduction that resulted in the tax not being paid and the subsequent increase in the size of the Residuary Trust. According to Defendant, Plaintiffs alone have benefitted from the increase to the Residuary Trust, and have enjoyed the bounty of the increase for the past two decades. Defendant further points out that Plaintiffs in this action are the only beneficiaries of the remainder of the G.A. Buder, Jr. estate (i.e. the Residuary Trust) and that they alone prevented the timely payment of estate tax by making the improper QTIP election.
There is no dispute that, had the improper QTIP election not been made and a timely tax imposed, Plaintiffs would not have shouldered the entire additional tax burden on the G.A. Buder, Jr. estate. Review of the G.A. Buder, Jr. will and accompanying codicil reveal that one-fourth of the adjusted gross estate went to Kathryn Buder. Next, twenty-five percent of the net estate[20] was divided among various *1161 charitable and educational organizations. Then, specific bequests of $50,000.00 went to each of eleven grandchildren. Finally, the "rest, residue and remainder" of the estate went to Boatmen's National Bank and the three Buder sons in trust (i.e. the Residuary Trust).[21] During the life of Kathryn Buder, the trustees were to pay her "any portion or all" of the income from the trust. At Kathryn Buder's death, the Residuary Trust was to be divided in to equal parts and split among the Buder sons, and conditionally, Dorothy Buder, to be held and administered as distinct trust estates. The trustees were vested with the power to terminate the trust at any time. No remainder persons were specified in the will; thus, G.A. Buder, Jr.'s heirs had a remainder interest in the Residuary Trust.
First, according to Plaintiffs, if the tax had been imposed at the time of G.A. Buder, Jr.'s death, the charitable beneficiaries would have borne 28.99 percent of the tax burden. Pursuant to G.A. Buder, Jr.'s will, all estate taxes were to be paid before allocating twenty-five percent of the "remaining net estate" to various charitable entities. If Defendant had timely imposed the tax on the Residuary Trust that it now seeks to recoup, twenty-five percent of the tax burden would have fallen on these charitable entities which are not parties to this action.[22] Plaintiffs should not, in equity, be forced to shoulder the burden that should have been borne by the charitable entities; thus, the recoupment amount will be discounted by 28.99 percent.[23]
Second, Plaintiffs argue that any computation should take into account that G.A. Buder, Jr.'s heirs were remainder beneficiaries of the Residuary Trust and that Dorothy Buder was a conditional beneficiary of the Residuary Trust. At the time of Kathryn Buder's death, the Residuary Trust settled the claims against it with respect to the heirs and Dorothy Buder. Had the tax that Defendant now wishes to recoup been imposed in a timely manner, the Residuary Trust would have been smaller at the time of Kathryn Buder's death. In effect, they, like the charitable entities, would have shared in the estate tax burden if the QTIP election had not been permitted. Plaintiffs cannot, in equity, be forced to bear the tax burden that should have been partly borne by Dorothy Buder and the heirs. To account for this, Plaintiffs suggest that any recoupment should be reduced by 15.56 percent.[24] The *1162 Court agrees that the 15.56 percent reduction is appropriate under the circumstances of this case.
Therefore, of the $9,417,216.00 estate tax that should have been imposed on the Residuary Trust at the time of G.A. Buder's death, $5,221,846.00 is attributable to Plaintiffs, here.[25] The refund due will inure to the exclusive benefit of the three Buder sons; likewise, the recouped amount consists entirely of the tax burden that would have been borne by the Buder sons had the improper QTIP election not been made and had the tax been imposed in a timely manner.
2. Interest on the Recouped Tax
The parties disagree as to whether Defendant is entitled to recoup interest on the G.A. Buder Jr. estate's unpaid liability. Defendant states that it is entitled to recover interest and that such interest accrues as a matter of law. Plaintiffs argue that Defendant is not permitted to recover interest on the tax that should have been paid. The parties' arguments center around the question of whether Defendant is entitled to interest as a matter of law, and whether it is equitable to allow Defendant to recoup interest in this case.[26]
Plaintiffs argue that there is no legal or equitable basis for awarding interest in this case. Plaintiffs acknowledge that I.R.C. § 6601(a)[27] generally prescribes that interest "shall be paid" on any taxes not paid on or before the date they are due, but point to I.R.C. § 6601(g)[28] for the proposition that no interest is due if the statute of limitations is closed with respect to the tax to which the interest relates.[29] *1163 Plaintiffs also point to I.R.C. § 6601(c),[30] § 6404(e)(i)(A),[31] and § 6404(g)[32] in support of their argument that the tax code itself reflects a public policy preventing the award of interest to Defendant.
Defendant asserts that interest is payable as a matter of law. Defendant argues that interest on the unpaid tax accrues by operation of I.R.C. § 6601 and that such interest is not intended to act as a penalty, but is instead intended to compensate the Government for the delayed payment. According to Defendant, interest on a tax liability is part of the tax liability itself. See Fisher v. United States, 80 F.3d 1576, 1580 (Fed.Cir.1996) (government entitled to interest under setoff theory because I.R.C. "treats interest on a tax liability as an integral part of the liability itself"). Defendant points to I.R.C. § 6601(e)[33] for *1164 the proposition that the Code itself treats interest as part of the tax liability. Defendant argues that "[b]ecause interest is part of the tax for purposes of assessment, collection, and payment, both law and logic dictate that it should be included in tax for purposes of equitable recoupment." Def.'s Sur-rep. in Supp. of Comp. at 3. Citing E.I. duPont de Nemours & Co. v. United States, 137 Ct.Cl. 191, 147 F.Supp. 486 (1957) and Rogers v. United States, 2000 WL 382015 (D.Kan. March 17, 2000), Defendant argues that courts have allowed the recoupment of interest in equitable recoupment cases. Plaintiffs dispute Defendant's characterization of these cases.
The Court agrees with the parties that the general rule in the Code itself is that interest shall be paid with respect to any tax not paid on or before the date it is due, and that the Code contains exceptions to this general rule for certain narrowly defined circumstances. However, none of the Code provisions directly address whether interest is due in the equitable recoupment context. Equitable recoupment is an affirmative defense; it is an equity-based remedy available to Defendant here only to prevent Plaintiffs' unjust enrichment. The doctrine was not created to allow the Government to collect taxes that have not been paid on time; instead, the doctrine in this case is applied to reduce the refund to which Plaintiffs are lawfully entitled. Contrary to Defendant's assertions, E.I. duPont and Rogers also fail to provide this Court with firm guidance as to whether interest is due in this case.
In determining whether Defendant is entitled to recover interest here, the Court has found that the recent Eighth Circuit opinion in IES Industries, Inc. v. United States, 349 F.3d 574 (8th Cir.2003), provides the most relevant guidance. In IES Industries, a power plant owner brought an action to challenge the Government's decision to deny its claim for certain refunds. Among other relief, the trial court found that the Government should be permitted to equitably recoup certain 1991 and 1992 tax underpayments from certain 1989 and 1990 tax overpayments. IES, 349 F.3d at 576. On appeal, the power plant owner challenged the district court's decision permitting equitable recoupment. The Eighth Circuit affirmed the district court's decision. Id. at 582. The district court's decision indicates that the total overpayment was $27,841,534.20 and that the total underpayment was $13,942,150.00. IES Indus. v. United States, 2002 WL 31367661 (N.D.Iowa Aug.15, 2002). The district court entered judgment for the power plant owner "in the total amount of $13,899,384.20 ($27,841,534.20 minus $13,942,150.00) plus interest according to law." Id. Thus, the amount of tax that should have been paid in 1991 and 1992 was subtracted from the total refund due. The power plant owner was given statutory interest on the refund due, but no interest was assessed on the underpayments for 1991 and 1992.
After lengthy consideration of the statutes and cases cited by the parties, as well as other relevant authority, the Court concludes that the IES Industries approach is the proper one. Therefore, this Court will follow the calculation procedure utilized by the district court in IES Industries, recognizing that the judgment in that case was recently affirmed by the Eighth Circuit. Thus, the Court will not *1165 permit Defendant to recoup interest on the $5,221,846.00 it will equitably recoup in this case.
Accordingly,
IT IS HEREBY ORDERED that Defendant United States' Motion for Judgment on the Pleadings [doc. # 10] is GRANTED, in part, and DENIED, in part. Plaintiffs Estate of Kathryn M. Buder, et al.'s Motion for Summary Judgment [doc. # 17] is GRANTED, in part, and DENIED, in part. Judgment shall be entered for Plaintiffs in the total amount of $12,821,684.17 ($18,043,530.17 minus $5,221,846.00), plus statutory interest from October 19, 2000.

JUDGMENT
In accordance with the Memorandum and Order of this Court filed on this date and incorporated herein,
IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Plaintiffs Estate of Kathryn M. Buder, et al. shall have judgement against Defendant United States of America in the total amount of $12,821,684.17 ($18,043,530.17 minus $5,221,846.00), plus statutory interest from October 19, 2000.
NOTES
[1] The Court's recitation of facts comes from Plaintiffs' Statement of Uncontroverted Material Facts, all of which have been admitted by Defendant.
[2] G.A. Buder Jr.'s will is provided as an exhibit to the Complaint. Pursuant to the will, G.A. Buder, Jr.'s property was to be divided as follows: (1) all personal effects to Kathryn Buder; (2) one-fourth the value of the adjusted gross estate to Kathryn Buder, satisfied exclusively from assets qualifying for the marital deduction; (3) twenty-five percent of the remaining net estate (total assets passing through administration minus all allowed claims, expenses of administration, and taxes) to various charitable organizations; (4) residue of estate in trust to Boatmen's National Bank and G.A. Buder, III, Theodore Buder, and Marshall Buder. This final provision created the Residuary Trust at issue in this case. A subsequent codicil changed and added certain provisions to the will; however, no changes were made to the Residuary Trust at issue here.
[3] Article VI(e) of the will provides:

During the life of my beloved wife Kathryn M. Buder, my trustees shall pay over and deliver to her monthly any portion or all of the net income of the trust estate as they may in their discretion deem advisable. Any portion of the income remaining after making such payments shall be paid over and delivered to my sons in equal shares, share and share alike.
Upon the death of my said wife, my said trustees shall divide all of the assets and the property of said trust estate which are capable of and susceptible to division in kind and the cash proceeds of any portion which is not, into as many separate equal parts as there shall be sons of mine surviving my said wife .... Thereafter, each of said shares shall be held and administered in keeping with the provisions of this will, but as separate and distinct trust estates, each of my sons surviving my wife being a beneficiary of one of said trust estates .... Thereafter, the trustees shall pay from and out of each of said trust estates to the beneficiaries thereof the net income thereof....
[4] Defendant adds that, a month before the trial date, the United States did issue a notice of deposition to the Residuary Trust trustees, telling them that it intended to ask about the distribution of the Residuary Trust's income. The deposition never took place, however.
[5] At the time of her death, the value of the Residuary Trust was $45,570,437.22.
[6] Plaintiff Estate filed a claim for refund of $18,043,530.17. Plaintiff Residuary Trust filed a claim for refund of $18,043,530.17. Plaintiffs G.A. Buder, III, Theodore A. Buder, and Marshall O. Buder, as the remaining beneficiaries of the Residuary Trust, filed a claim for refund of $18,043,530.17. Plaintiffs G.A. Buder, III, Theodore A. Buder, and Marshall O. Buder, as remaining beneficiaries of the Residuary Trust, filed claims for refund of $6,014,510.05 each. The estate tax on the Residuary Trust was paid from the Residuary Trust itself. The Buder sons are the only remaining beneficiaries of the Residuary Trust; thus, any refund due will inure to their exclusive benefit.
[7] Dorothy Buder was a nun and was to receive an equal part of the Residuary Trust only if she had given up a religious life and returned to a secular life.
[8] As Defendant points out, this claim by Plaintiffs runs counter to their claim that they are entitled to a refund in this case. In claiming that they are entitled to a refund due to the improper inclusion of the Residuary Trust in Kathryn Buder's estate, Plaintiffs necessarily imply that the Residuary Trust erroneously included in the Kathryn Buder estate is the same Residuary Trust that was erroneously excluded from the G.A. Buder, Jr. estate due to the improper QTIP election. Having made such an assertion, Plaintiffs cannot now be allowed to claim that Residuary Trust in G.A. Buder, Jr.'s estate is a separate piece of property from the Residuary Trust in Kathryn Buder's estate.
[9] The court notes that the Eighth Circuit rejected a somewhat similar argument in Vitt. In that case, the government argued that the "single transaction" requirement had not been met because the estate taxes imposed on the real property at issue resulted from two separate taxable events (i.e. the death of Mr. Vitt and the subsequent death of Mrs. Vitt). In rejecting the argument and concluding that there was a single taxable event, the Eighth Circuit reasoned that the taxes at issue pertained to the same piece of property and that the inclusion of the property's partial value in both of the estates resulted from the same transaction (i.e. the Vitts' transfer of the real property with the retention of a life estate for their joint lives and for the life of the survivor). Estate of Vitt, 706 F.2d at 875.
[10] Indeed, the parties themselves made inconsistent assertions regarding the tax treatment of the Residuary Trust. At the time of G.A. Buder, Jr.'s death, Plaintiffs maintained that the Residuary Trust was subject to estate tax as part of Kathryn Buder's estate. At the time of Kathryn Buder's death, they paid the tax due on the Residuary Trust, apparently believing the Residuary Trust should be taxed with the Kathryn Buder estate. Now, they claim that the Residuary Trust is not subject to tax with the Kathryn Buder estate, but that it should have been taxed with the G.A. Buder, Jr. estate. Similarly, at the time of G.A. Buder, Jr.'s death, Defendant acquiesced, even after performing an audit, in the decision that the Residuary Trust should be taxed with the Kathryn Buder estate and did not raise its objection to that decision until it was too late to do so. Now, Defendant agrees with Plaintiffs' contention that the Residuary Trust should not have been taxed with the Kathryn Buder estate, but that it should have been taxed with the G.A. Buder, Jr. estate. Clearly, there is one transaction at issue here; the inconsistency centers on when the property at issue should have been taxed.
[11] In evaluating the equities of the case, the Stone court stated:

Equitable conceptions of justice compel the conclusion that the retention of the tax money would not result in any unjust enrichment of the government. All agree that a tax on the income should be paid, and that if the trustees are permitted to recover no one will pay it. It is in the public interest that no one should be permitted to avoid his just share of the tax burden except by positive command of law ....
Stone, 301 U.S. at 537, 57 S.Ct. 851.
[12] Under Plaintiffs' own logic regarding judicial estoppel, if the prior court had ruled on the QTIP issue, their claim for a refund would likely similarly be barred. In the prior litigation, Plaintiffs argued that the Residuary Trust was a QTIP and that it was deductible from the G.A. Buder, Jr. estate. In this refund action, they argue that it was not a QTIP and that it was not deductible from the G.A. Buder, Jr. estate.
[13] The court further noted that "the defense is not a counter demand on [the trustees], but a denial of their equitable right to undo a payment which, though effected by an erroneous procedure, has resulted in no unjust enrichment to the government, and in no injury to [the trustees] or their beneficiary." Stone, 301 U.S. at 539, 57 S.Ct. 851.
[14] The Vitt court stated:

We are also unpersuaded by the government's contention that recoupment is improper in the instant case because no identity of beneficial interest exists between the payor of the erroneous overpayment and the recipients of the recoupment. Absence of an identity of interest may result in the denial of recoupment. See, e.g., Kramer v. United States, 186 Ct.Cl. 684, 406 F.2d 1363, 1370-71 (1969). In this case, however, we believe sufficient identity of interest has been demonstrated. In substance, the same parties detrimentally affected by the overpayment will receive the proceeds from recoupment; no additional parties will benefit from recoupment here, nor will any party previously affected adversely be precluded from recovery. Compare Kramer, 406 F.2d at 1371.
[15] Plaintiffs rely on Kramer for the proposition that, because they derived only some of the benefit of the Residuary Estate, it would be inequitable to allow recoupment of the entire tax from them. See Mem. in Opp. to Def.'s Calc. at 9. While the Court does not discount the inequality pointed out by Plaintiffs, the Court does note that Kramer involved the converse to the factual situation presented here. In Kramer, the Court was concerned, not with Mrs. Kramer as the beneficiary of the trust, but with the rights of certain remaindermen who would benefit from a refund (and who would suffer if equitable recoupment were applied). Unlike the Court in Kramer, this Court is not faced with the problem of detrimentally affecting the rights of any remainder persons not parties to this action. Indeed, the Buder sons are the only remaining beneficiaries of the Residuary Trust. All other beneficiaries have released their claims against the Residuary Trust.
[16] Thus, Plaintiffs' argument that the identity of interest prong is lacking here is actually more properly viewed as an equitable argument regarding the amount of tax the government should be permitted to recoup.
[17] These computations were submitted by Defendant at the request of the Court after the hearing on this matter. After Defendant filed its computations, Plaintiffs filed their memorandum in opposition, and Defendant filed its reply. Without requesting leave of court, Plaintiffs then filed a sur-reply to Defendant's reply. Upon Defendant's motion, the Court accepted Plaintiffs' sur-reply and permitted Defendant to respond. The Court is now well-informed as to the computation issues, and the parties have had a full opportunity to be heard on this matter.
[18] Specifically, Plaintiffs objected as follows: (1) On Schedule 2 of Exhibit A, column one is headed "per IRS SND;" Plaintiffs presumed this refers to a statutory notice of deficiency and noted that they had not received such a document. (2) On Schedule 2 of Exhibit A, column three is headed "USDC ED MO;" Plaintiffs presumed the figures in this column were obtained from a report generated at the termination of the litigation regarding G.A. Buder, Jr.'s estate and noted that they had not received such a document. According to Plaintiffs, as a result of the absence of these source documents, they could not determine whether lines four and five of Schedule 1 of Exhibit A were correct.

In response, Defendant stated: (1) The column "per IRS SND" denotes the figures taken from the IRS audit report of the G.A. Buder, Jr. estate. (2) The column "USDC ED MO" are the figures generated by the judgment in the G.A. Buder, Jr. litigation and are from the change in the estate caused by the judgment, not from any report. Thus, the $33,916,623.00 on line four is the total allowable deductions after the judgment in the prior litigation is accounted for; these calculations are shown on Exhibit A, page 2, and are drawn from Plaintiffs' refund claim submitted in that suit. The ($17,428,337.00) on line five represents the reduction in allowable deductions as a result of disallowing the marital deduction and by the increase in the allowable charitable bequests. These calculations are shown on Exhibit A, page 2, and are drawn from the same refund claim in the earlier suit. Thus, Plaintiffs' specific concerns appear to have been satisfactorily addressed. Still, the Court notes that Plaintiffs nonetheless state that "even after his second declaration, Mr. Blake's calculations include figures that have no apparent source." Rep. Mem. in Opp. to Comp. at 6. However, Plaintiffs provide no elaboration on this point and do not direct the Court's attention to any other specific issues of fact with regard to the calculations. Thus, they have not met their burden of raising a genuine issue with regard to any material fact.
Plaintiffs do belatedly raise one other issue unrelated to purported problems with supporting documents. Specifically, Plaintiffs indicate that the improper election was the result of "an honest mistake relating to a new and confusing statutory scheme" due to a change in the estate tax laws that came about in 1981. Plaintiffs state that the G.A. Buder, Jr. estate "cannot be faulted for making its election in 1985 at a time when the law on the QTIP deduction had not yet developed." Rep. Mem. in Opp. to Def.'s Comp. at 7. This argument does nothing to change the Court's analysis in this case. As in initial matter, the G.A. Buder, Jr. return was filed in 1986, five years after this change in the law. Moreover, on one hand, such circumstances tend to mitigate any perception that Plaintiffs purposefully misrepresented that the Residuary Trust was eligible for the QTIP election. On the other hand, that the law was unsettled would tend to mitigate any perception that the fact that the QTIP election was improper should have been "obvious" and "apparent" to Defendant, as Plaintiffs have repeatedly asserted.
[19] Plaintiffs do belatedly raise one other issue unrelated to purported problems with supporting documents. Specifically, Plaintiffs indicate that the improper election was the result of "an honest mistake relating to a new and confusing statutory scheme" due to a change in the estate tax laws that came about in 1981. Plaintiffs state that the G.A. Buder, Jr. estate "cannot be faulted for making its election in 1985 at a time when the law on the QTIP deduction had not yet developed." Rep. Mem. in Opp. to Def.'s Comp. at 7. This argument does nothing to change the Court's analysis in this case. As in initial matter, the G.A. Buder, Jr. return was filed in 1986, five years after this change in the law. Moreover, on one hand, such circumstances tend to mitigate any perception that Plaintiffs purposefully misrepresented that the Residuary Trust was eligible for the QTIP election. On the other hand, that the law was unsettled would tend to mitigate any perception that the fact that the QTIP election was improper should have been "obvious" and "apparent" to Defendant, as Plaintiffs have repeatedly asserted.
[20] In the will, "net estate" is defined as the "total assets passing through administration minus all allowed claims, expenses of administration and taxes."
[21] As previously noted, if Dorothy Buder had returned to a secular life by the time of Kathryn Buder's death, she was to share equally with the three Buder sons in every way.
[22] These entities are: The Salvation Army; the Law Library Association of St. Louis; the American Security Council Education Foundation; Dean Sauer, Lawrence Meisel, Paul Busiek, Marilyn Griesdieck, and G.A. Buder, III in trust for promoting the cause of patriotism; the National Museum of Transport; The Covenant of the Good Shepherd; Bethesda General Hospital; Little Sisters of the Poor; The Foundation for Education, Scholarship, Patriotism, and Americanism; St. Louis Children's Hospital; Shriners Hospital for Crippled Children; Sherwood Forest Camp Service; and The Franciscan Missionary Brothers of the Sacred Heart of Jesus.
[23] Plaintiffs have submitted an exhibit demonstrating that, initially, for each dollar of additional tax, the charitable entities would have been responsible for paying 25 cents. As the amount of tax increases, the percentage that would have been borne by the charitable entities rises to 28.99 percent. See Pl.Ex. L. Defendant has not raised any genuine issue as to any material fact regarding this computation.
[24] Plaintiffs state that, at the time of Kathryn Buder's death, the value of the Residuary Trust was $45,570,437.22. In addition to the Buder sons, the beneficiaries of the Residuary Trust included Dorothy Buder and the heirs. The Buder sons reached a settlement with Dorothy Buder for $1.8 million, and they settled with their respective descendants for a total of $5,293,030.00. In all, the Residuary Trust paid $7,093,030.00 to settle these claims, representing 15.56 percent of the total value of the Residuary Trust at the time of Kathryn Buder's death. Defendant has not raised any genuine issue as to any material fact regarding this computation.
[25] This represents 55.45 percent of the tax that should have been imposed on the Residuary Trust. As previously noted, 28.99 percent and 15.56 percent of the tax would have been borne by other beneficiaries of the G.A. Buder, Jr. estate.
[26] Plaintiffs do make one other argument regarding the award of interest: Plaintiffs state that Defendant has waived any claim to interest because, when Defendant raised the affirmative defense of equitable recoupment, it did not explicitly state that it sought an award of interest. Defendant responds that, because interest is part of the tax for purposes of assessment, collection, and payment, it should also be included as part of the tax for purposes of equitable recoupment. Thus, according to Defendant, it was not required to expressly add "and interest" to its affirmative defense because it is entitled to statutory interest as a matter of law. The Court will not address this argument individually because the issue is necessarily encompassed within the larger question of whether Defendant is entitled to interest as a matter of law.
[27] I.R.C. § 6601(a) states as follows:

(a) General rule. If any amount of tax imposed by this title (whether required to be shown on a return, or to be paid by stamp or by some other method) is not paid on or before the last date prescribed for payment, interest on such amount at the underpayment rate established under section 6621 shall be paid for the period from such last date to the date paid.
[28] I.R.C. § 6601(g) states as follows:

(g) Limitation on assessment and collection. Interest prescribed under this section on any tax may be assessed and collected at any time during the period within which the tax to which such interest relates may be collected.
[29] Plaintiffs argue that it is "undisputed" that they "are not the taxpayer  the G.A. Buder estate" from which Defendant did not collect taxes at the time of G.A. Buder, Jr.'s death. Mem. in Opp. to Comp. at 8. This argument is misplaced. The very theory upon which equitable recoupment is premised in this case is that the G.A. Buder, Jr. estate and the Kathryn Buder estate should be treated as "one taxpayer." As such, Defendant seeks to recover statutory interest from the date this taxpayer should have paid an estate tax on the Residuary Trust. Contrary to Plaintiffs' argument, the tax is not being "imposed" on the Buder sons; instead, it is being imposed on the G.A. Buder, Jr. estate. Due to the unique circumstances of this case, however, the amount Defendant is able to recoup from that estate has been reduced to the amount of the tax for which the Buder sons would have been responsible if the improper QTIP election had not been allowed; this is because the Buder sons alone will benefit from the refund due in this case.

Further, Plaintiffs' argument that no interest can be recovered because the statute of limitations has expired appears to ignore the very rationale for equitable recoupment: by its very definition, equitable recoupment is a remedy that can only be used in circumstances where the statute of limitation has already run.
[30] I.R.C. § 6601(c) states in relevant part:

(c) Suspension of interest in certain income, estate, gift, and certain excise tax cases. In the case of a deficiency as defined in section 6211 (relating to income, estate, gift, and certain excise taxes), if a waiver of restrictions under section 6213(d) on the assessment of such deficiency has been filed, and if notice and demand by the Secretary for payment of such deficiency is not made within 30 days after the filing of such waiver, interest shall not be imposed on such deficiency for the period beginning immediately after such 30th day and ending with the date of notice and demand and interest shall not be imposed during such period on any interest with respect to such deficiency for any prior period....
[31] I.R.C. § 6404(e) states in relevant part:

(e) Abatement of interest attributable to unreasonable errors and delays by Internal Revenue Service.
(1) In general. In the case of any assessment of interest on
(A) any deficiency attributable in whole or in part to any unreasonable error or delay by an officer or employee of the Internal Revenue Service (acting in his official capacity) in performing a ministerial or managerial act
. . . .
the Secretary may abate the assessment of all or any part of such interest for any period. For purposes of the preceding sentence, an error or delay shall be taken into account only if no significant aspect of such error or delay can be attributed to the taxpayer involved, and after the Internal Revenue Service has contacted the taxpayer in writing with respect to such deficiency or payment.
[32] I.R.C. § 6404(g) states in relevant part:

(g) Suspension of interest and certain penalties where secretary fails to contact taxpayer.
(1) Suspension.
(A) In general. In the case of an individual who files a return of tax imposed by subtitle A for a taxable year on or before the due date for the return (including extensions), if the Secretary does not provide a notice to the taxpayer specifically stating the taxpayer's liability and the basis for the liability before the close of the 1-year period ... the Secretary shall suspend the imposition of any interest, penalty, addition to tax, or additional amount with respect to any failure relating to the return which is computed by reference to the period of time the failure continues to exist and which is properly allocable to the suspension period.
[33] I.R.C. § 6601(e) states in relevant part:

(e) Applicable rules. Except as otherwise provided in this title
(1) Interest treated as tax. Interest prescribed under this section on any tax shall be paid upon notice and demand, and shall be assessed, collected, and paid in the same manner as taxes. Any reference in this title (except subchapter B of chapter 63, relating to deficiency procedures) to any tax imposed by this title shall be deemed also to refer to interest imposed by this section on such tax.